**Thomas Dana WATSON, Esquire, as The Incorporator and Original and Current Trustee/Director,**

v.

**TRUSTEES OF CONNEAUT LAKE PARK, INC., Victor Leap, William Gregg, Anthony Petruso, Ben Miceli, Bob Ross,**

v.

**Asset Management, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2002.
Decided March 19, 2002.
Reargument Denied May 8, 2002.

Robert C. LeSuer, Erie, for appellant.

Robert Gay Guthrie, Meadville, for appellees.

Before FRIEDMAN, J., LEADBETTER, J., and FLAHERTY, Senior Judge.

OPINION BY Judge LEADBETTER.

In this struggle for control of a nonprofit corporation, appellant Asset Management raises two issues for our consideration. First, Asset Management asserts that the trial court abused its discretion by replacing the corporation's custodian. Second, Asset Management asserts that the trial court abused its discretion by failing to adequately protect its financial interests. Because the trial court did not abuse its discretion on either point, we affirm the trial court's order.

We note at the outset that there is a dearth of facts in the record. The following facts were gleaned from the parties' briefs, motions, and representations to the trial court. Gary Harris, a businessman currently in federal prison on unrelated racketeering charges, incorporated Resorts Holding Trust. Resorts Holding Trust then bought properties known collectively as Conneaut Lake Park, an amusement park and campground facility. Thereafter, on August 29, 1997, Resorts Holding Trust assigned the Conneaut Lake Park property to Property on the Lake, Inc. Asset Management claims that Property on the Lake, Inc. then leased the real property for a term of 99 years to Asset Management, an alleged alter ego of Gary Harris. It is further asserted that Property on the Lake, Inc. sold personalty located at Conneaut Lake Park (amusement rides and related property) to four or five holding companies controlled by Asset Management. Although not entirely clear from the record, it appears that the lease was not recorded and documents pertaining to the sale of the personal property were lost.

After these alleged transactions took place, a nonprofit corporation known as Trustees of Conneaut Lake Park, Inc. (TCLP) was formed. Shortly thereafter, Property on the Lake, Inc. gifted all personal and real property to the newly formed TCLP. In contrast to Asset Management's alleged lease, this deed was promptly recorded. Additionally, Harris and George Csepegi (President of Property on the Lake, Inc.), executed quitclaim deeds in favor of TCLP.

On May 6, 1998, the board of directors of TCLP (also referred to as trustees), entered into a "settlement agreement" with Asset Management.[1] At least one dispute that gave rise to the settlement agree-

_____

1. It is unclear from the record what was in

trustee, Thomas Watson, voted against adopting the settlement agreement.[2] Watson filed an action in equity in the Court of Common Pleas for Crawford County averring, *inter alia,* that the settlement agreement improperly recognizes Asset Management's lease and its holding companies' purchase of personal property, and that the majority of the TCLP's board "conspired to engage in a continuing course of conduct in direct breach of fiduciary duty contrary to public trust." R.R. at 15a. The board majority filed an answer to his complaint denying any wrongdoing. Watson then petitioned the trial court to appoint a custodian pursuant to section 15 Pa.C.S. § 5764.

In an order dated January 29, 1999, the trial court granted Watson's motion and appointed his counsel, William Jordan, as custodian of TCLP.[3] Watson v. Conneaut Lake Park Inc. [Eq. 1998–8, filed Jan. 29, 1999] Order at 1. The trial court did not state the basis upon which it entered the order; however in a later order the trial court indicated that the parties consented

to appointing a custodian. Watson v. Conneaut Lake Park Inc. [Eq. 1998–8 filed March 3, 2001] Order at 2. Asset Management was not a party at this time; it was later allowed to intervene.[4] Subsequently, on February 2, 2001, the trial court conducted a hearing to address, *inter alia,* Jordan's motion to withdraw as counsel, Asset Management's motion for reconsideration of appointment of a custodian,[5] and Asset Management's request for a bond or other financial protection. The trial court granted Jordan's request to withdraw as custodian and, after examination by the court and the parties, appointed Herbert Brill as custodian. The trial court cited the financial distress of the park, preservation of asset value, and protection of creditors as reasons for continuing the custodianship. The court required Brill to post a bond in the amount of $100,000.00 [6] for the protection of all creditors, but refused to require an additional bond for the specific protection of Asset Management.

Dissatisfied with the trial court's order, Asset Management appealed pursuant to Pa. R.A.P. 311(a)(2).[7] Asset Management

---

**2.** At the time the settlement agreement was reached, the board apparently consisted of five trustees. Watson dissented and filed this court action, and a second trustee allegedly resigned in protest. Presumably the other three trustees voted in favor of adopting the settlement agreement.

**3.** It does not appear that the trial court realized attorney Jordan represented Watson at the time it appointed him custodian.

**4.** Specifically, the court stated:

On January 29, 1999, the original parties to this action who were represented by counsel agreed that William T. Jordan, Esquire, should be appointed as the custodian and we entered two Orders on that date which were consented to by all the parties to the action at that time.

On October 27, 1999, we permitted Asset Management to intervene because although they did not produce a written document or documents showing their ownership of certain amusement park rides at Conneaut Lake Park, they maintained that they had

such an interest and, additionally, there appeared to be some documentation to show that Asset Management had a license to lease certain real estate on which the amusement park rides, in question, were located.

**5.** All parties except Asset Management favored a custodian continuing to run the park.

**6.** Op. 2/6/01 at p. 15.

**7.** This appeal was originally filed in the Superior Court and later transferred to the Commonwealth Court. Pa. R.A.P. 311(a)(2) states:

(a) **General Rule.** An appeal may be taken as of right and without reference to Pa. R.A.P. 341(c) from:

. . . .

(2) *Attachments, etc.* An order confirming, modifying or dissolving or refusing to confirm, modify or dissolve an attachment, custodianship, receivership or similar matter affecting the possession or control of property. . . .

now asks us to determine whether the trial court abused its discretion by appointing a second custodian, and whether the trial court failed to adequately protect Asset Management's financial interests.

■ After reviewing the record in this matter we conclude that the court did not abuse its discretion by replacing Jordan with Brill. Asset Management correctly points out that financial distress and the protection of creditors are not among the statutory grounds for appointing a custodian. *See* 15 Pa.C.S. § 5764.[8] However, Asset Management overlooks the fact that, at the time the initial custodian was appointed, none of the parties objected. Asset Management cites no authority, and we are aware of none, which would require the proponents of a custodianship to reestablish the grounds set forth in section 5764 every time the individual serving as custodian is replaced.[9] Nor do we believe that Asset Management has standing to seek the removal of a custodian. Section 5764 states that "The court, upon application of any *member*, may appoint one or more persons to be custodians. . . ." (emphasis added). Likewise, Section 5981 states "The court may, upon petition filed by a *member* or *director* of a nonprofit corporation, entertain proceedings for the involuntary winding up and dissolution of the corporation. . . ." (emphasis added). Asset Management is neither a member nor a director of TLCP. Since the legislature thus restricted the class of persons entitled to assert an interest in the internal affairs and management structure of a non-profit corporation, this limitation logically must apply to any action seeking to undo the appointment of a custodian, a matter not specifically addressed in the statute.

■ Moreover, we believe that once a custodian has been appointed, the termination of that custodianship is vested in the sound discretion of the court, and is not confined to an examination of whether one of the criteria set forth in section 5981 still exists. Even after the immediate crisis which prompted a custodian's appointment has passed, continuation of the custodianship may be necessary until

8. That section reads in pertinent part:
(a) **General Rule.**—The court, upon application of any member, may appoint one or more persons to be custodians of and for any nonprofit corporation when it is made to appear:
(1) That at any meeting for the election of directors the members are so divided that they have failed to elect successors to directors whose terms have expired or would have expired upon the qualification of their successors; or
(2) that any of the conditions specified in section 5981 (relating to proceedings upon petition of any member, etc.) exists with respect to the corporation.
Section 5981 reads in pertinent part:
The court may, upon petition filed by a member or director of a nonprofit corporation, entertain proceedings for the involuntary winding up and dissolution of the corporation, when any of the following are made to appear:
(1) That the objects of the corporation have wholly failed; or are entirely abandoned, or that their accomplishment is impracticable.
(2) That the acts of the directors, or those in control of the corporation, are illegal, oppressive, or fraudulent, and that it is beneficial to the interests of the members that the corporation be wound up and dissolved.
(3) That the corporate assets are being misapplied or wasted, and that it is beneficial to the interest of the members that the corporation be wound up and dissolved.
(4) That the directors or other body are deadlocked in the management of the corporate affairs and the members are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof.
15 Pa.C.S. § 5981.

9. Although objecting to the appointment of any new custodian, Asset Management voiced no objection to the qualifications of Mr. Brill. Watson v. Conneaut Lake Park Inc. [Eq. 1998–8, filed Feb. 6, 2001] Order at 5.

the corporation's affairs are sufficiently stabilized that it may once again return to self management.

Here, the court opined:

The only way to meet the goal of all of the parties to have Conneaut Lake Park open for the 2001 season is to have a custodian in place.

We say that because the current weakened financial position of the trustees of Conneaut Lake Park, Inc., would not permit the borrowing of the off season funds that are needed to prepare the park for opening and it is only with the custodian in place and the support of the court, through that custodian, that there is any hope that the funds can be borrowed to open the park for the 2001 season.

\* \* \*

[W]hile the permission of this court and the subsequent issuance of the receiver's certificates do not guarantee repayment, they offer substantially more security to proposed lenders than the trustees would be able to provide themselves without a custodian and, therefore, we believe at this point it is imperative that a custodian remain in place to satisfy the desire of all the parties to keep the park open while this litigation is resolved.

Watson v. Conneaut Lake Park Inc. [Eq. 1998–8, filed Feb. 6, 2001.] Order 7–8. In addition:

Finally, we note that as our Memorandum Order of February 6, 2001, indicates, it is not this court's intention that a custodian remain in place indefinitely.... [W]e have made it clear that we want to see a specific plan from the new custodian to bring the custodianship to an end and in hearings with the new custodian present, it is clear that his objective is to do exactly that as soon as it is feasible.

*Id.* Asset Management does not challenge the court's conclusions in this regard, but asserts that financial considerations are insufficient basis as a matter of law. For the reasons stated above, we disagree, and further conclude that common pleas' decision to continue the custodianship temporarily was well within the range of its discretion.

■ Similarly, we find that the trial court did not abuse its discretion by declining Asset Management's request for special financial protection. Asset Management requested that either 25% of the Park's gate receipts be placed in escrow, or for the custodian to set aside a special bond in its favor. The trial court made it clear that:

There is absolutely no way that Conneaut Lake Park can remain open without a custodian in place at this time and, further, there is no way that Conneaut Lake Park can stay open if we allow any amount of money to be escrowed to pay any amounts that may be due to Asset Management if there are, [sic] in fact, successful in this litigation. Further, a bond to protect against any possible claim of Asset Management is simply not feasible.

As we have indicated in our Memorandum Order of February 6, 2001, the remedy that Asset Management has is in a companion replevin action at A.D. No.1999—746 whereby they can, pursuant to Pa.R.Civ.P. 1075.1 request seizure of the assets in dispute if they can establish the probable validity of their claim and are prepared to post a bond for double the value of the property.

Watson v. Conneaut Lake Inc. [Eq. 1998–8 filed March 21, 2001] Order at 3. The court found that all of the parties, including Asset Management, agreed that the best way to preserve the value of the assets was to keep the park operating, while Asset Management's suggested relief would likely cause the park to fail. *Id.* Moreover, Asset Management failed to place on the

record any evidence that it will be harmed absent the protections it requests.

For the foregoing reasons, we affirm the trial court's order.

### ORDER

AND NOW, this 19th day of March, 2002, the order of the Court of Common Pleas for Crawford County in the above captioned matter is AFFIRMED.